## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **CANDY MOCZULSKI,** | **Case No.: 1:18-cv-01094-JKB** |
| **Plaintiff,** | |
| **vs.** | **Hon. Judge James K. Bredar** |
| **FERRING PHARMACEUTICALS, INC.,** | |
| **Defendant.** | |

## FERRING PHARMACEUTICALS INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................................1

BACKGROUND ................................................................................................................2

LEGAL STANDARD .........................................................................................................5

I.      BECAUSE PLAINTIFF HAS NOT PLAUSIBLY ALLEGED DEFECT,
        CAUSATION, OR INJURY, SHE LACKS STANDING AND FAILS TO PLEAD
        ELEMENTS OF HER CLAIMS (ALL COUNTS)........................................................6

        A.      Because Plaintiff Has Not Alleged An Injury in Fact, She Lacks Standing and
                Fails to Plausibly Plead the Elements of her State-Law Claims (All Counts)..6

        B.      Plaintiff Fails to Plead that Her Bravelle Was Defective or Caused Her Any
                Injury (All Counts). ...............................................................................9

II.     PLAINTIFF HAS NOT ADEQUATELY PLED OTHER ELEMENTS OF HER
        CLAIMS................................................................................................................9

        A.      Plaintiff's Claims for Breach of Contract and Breach of Express Warranty
                Fail Because No Warranty Was Ever Made (Counts II and VII)....................9

        B.      Plaintiff's Negligence Claims Fail Because Ferring Did Not Owe Her A Duty
                of Care (Counts I and V)........................................................................10

        C.      Plaintiff's Fraud-Based Claims Are Not Pled with Particularity (Counts VI
                and VIII). .............................................................................................11

III.    AS A MATTER OF LAW, THE MCPA DOES NOT APPLY TO THE INDIRECT
        SALE OF PRESCRIPTION PHARMACEUTICALS (COUNT VIII). ......................12

IV.     FERRING'S REIMBURSEMENT OFFER BARS PLAINTIFF'S CLAIM FOR
        UNJUST ENRICHMENT (COUNT IV). ...............................................................13

CONCLUSION .................................................................................................................14

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASE**

*21st Century Properties Co. v. Carpenter Insulation & Coatings Co.*,
    694 F. Supp. 148 (D. Md. 1988) ...........................................................................................11

*Allied Fire Protection, Inc. v. Thai*,
    No. PWG-17-551, 2017 WL 4354802 (D. Md. Oct. 2, 2017) ...............................................12

*Antonio v. Security Servs. of America, LLC*,
    701 F. Supp. 2d 749 (D. Md. 2010) .......................................................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...............................................................................................................6

*Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*,
    130 A.3d 1024 (Md. Ct. Spec. App. 2016) ...................................................................8, 9, 10

*Bell Atlantic Corp v. Twombly*,
    550 U.S. 544 (2007) ...........................................................................................................5, 6

*Benson v. State*,
    887 A.2d 525 (Md. App. Ct. 2005) .......................................................................................13

*Blue Circle Atlantic v. Falcon Materials, Inc.*,
    760 F. Supp. 516 (D. Md. 1991) ...........................................................................................11

*Brass Metal Prods., Inc. v. E-J Enterprises, Inc.*,
    984 A.2d 361 (Md. Ct. Spec. App. 2009) ..............................................................................8

*Doe v. Obama*,
    631 F.3d 157 (4th Cir. 2011) ..................................................................................................7

*Fischbach & Moore Intern. Corp. v. Crane Barge R-14*,
    632 F.2d 1123 (4th Cir. 1980) .............................................................................................8, 9

*Haley v. Corcoran*,
    659 F. Supp. 2d 714 (D. Md. 2009) ............................................................................6, 8, 11

*Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*,
    243 F. Supp. 3d 609 (D. Md. 2017) .......................................................................................7

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ................................................................................................................7

*McCleary -Evans v. Md. Dept. of Transp., State Highway Admin.*,
  780 F. 3d 582 (4th Cir. 2015) ...............................................................................6

*Mogavero v. Silverstein*,
  790 A.2d 43 (Md. Ct. Spec. App. 2002) ...........................................................13

*Morris v. Osmose Wood Preserving*,
  667 A.2d 624 (Md. App. Ct. 1995)............................................................8, 9, 13

*U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*,
  745 F. 3d 131 (4th Cir. 2014) ...............................................................................3

*Philips v. Pitt County Memorial Hosp.*,
  572 F.3d 176 (4th Cir. 2009) ................................................................................3

*Richmond, Fredericksburg & Potomac R. Co. v. U.S.*,
  945 F.2d 765 (4th Cir. 1991) ................................................................................5

*Rotorex Co. v. Kingsbury Corp.*,
  42 F. Supp. 2d 563 (D. Md. 1999) ......................................................................11

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
  678 F.3d 235 (3d Cir. 2012)..................................................................................5

*Spaulding v. Wells Fargo Bank, N.A.*,
  714 F. 3d 769 (4th Cir. 2013) ...............................................................................6

*Stanley v. Central Garden and Pet Corp.*,
  891 F. Supp. 2d 757 (D. Md. 2009) ....................................................................10

*Trinity Outdoor, L.L.C. v. City of Rockville, MD*,
  123 Fed. Appx. 101 (4th Cir. 2005)......................................................................5

*Walters v. McMahen*,
  795 F. Supp. 2d 350 (D. Md. 2011) ....................................................................12

**Rules and Statutes**

Federal Rule of  Evidence 201(b) ...................................................................................3

Federal Rule of  Evidence 201(c) ...................................................................................3

Federal Rule of Civil Procedure Rule 12(b) ........................................................ *passim*

Federal Rule of Civil Procedure Rule 8 ............................................................... *passim*

Federal Rule of Civil Procedure Rule 9(b) .......................................................... *passim*

Maryland Code Ann., Commercial Law § 13-303 ......................................................12

Maryland Code Ann., Commercial Law § 2-313 ........................................................................10

Maryland Consumer Protection Act .................................................................................. *passim*

**Other Authorities**

Mayo Clinic (Aug. 11, 2017), https://www.mayoclinic.org/tests-
    procedures/intrauterine-insemination/about/pac-20384722 ....................................................2

Mayo Clinic (March 22, 2018), https://www.mayoclinic.org/tests-procedures/in-
    vitro-fertilization/about/pac-20384716 .................................................................................2

U.S. Constitution Article III...........................................................................................1, 6

## INTRODUCTION

This case arises out of Ferring Pharmaceuticals Inc.'s ("Ferring's") voluntary recall of its prescription fertility drug, Bravelle, after routine quality monitoring indicated that *certain* (but not all) lots of Bravelle did not meet potency specifications throughout their entire shelf life and were therefore "out of specification" ("OOS") at the time of testing (12 months or more post-manufacture). Ferring subsequently instituted a voluntary reimbursement program to compensate patients' out-of-pocket expenses for Bravelle purchased in the U.S. between March 27, 2014 and October 15, 2015 (the "Reimbursement Program"). Compl. ¶ 7.

Plaintiff Candy Moczulski ("Plaintiff") alleges that she used Bravelle in connection with "a lengthy and expensive medical procedure" beginning in September 2014. Compl. ¶ 4. Rather than accepting reimbursement for the money she paid for Bravelle, Plaintiff filed an insufficient Complaint that attempts to assert eight causes of action against Ferring, all of which have fundamental pleading defects. Plaintiff's Complaint should be dismissed in its entirety pursuant to Federal Rules of Civil Procedure 8, 9(b), 12(b)(1), and 12(b)(6) for the following reasons:

***First***, Plaintiff does not plead with plausibility that she purchased and used defective Bravelle, or that Bravelle did not work as indicated for her. Without these allegations, Plaintiff lacks standing because she has not alleged that she suffered any injury-in-fact as a result of her use of Bravelle. U.S. Const. Art. III, § 2. The Complaint does not include any facts regarding her use of Bravelle, let alone facts supporting her conclusory allegation that Bravelle did not work for her. All she alleges is that Bravelle was recalled, which does not in and of itself create an injury to her. Without an actual case or controversy, this Court does not have jurisdiction to adjudicate any of Plaintiff's claims. Additionally, she has also failed to plead facts in support of the causation and injury elements common to all of her causes of action and therefore fails to satisfy Rules 8 and 12.

*Second*, Plaintiff's breach of contract and breach of express warranty claims should be dismissed because she fails to identify any particular statements *made by Ferring* that would form the basis of a contractual obligation or express warranty.

*Third*, Plaintiff's claims for negligence and negligent misrepresentation fail because she does not allege that Ferring owed her a duty of care, nor could she because there is no such duty under the economic loss doctrine.

*Fourth*, Plaintiff has not pled any of her fraud-based claims with particularity as required under Rule 9(b).  She fails to identify the content of any fraudulent statements, or any of the necessary factual circumstances surrounding those statements.

*Fifth*, Plaintiff's claim under the Maryland Consumer Protection Act fails as a matter of law because the Act does not apply to indirect sales of prescription pharmaceuticals to consumers.

*Sixth, and finally*, Plaintiff cannot recover for unjust enrichment because Ferring has already offered to reimburse her for any economic benefit it may have received from her (*i.e.*, what Plaintiff paid for Bravelle).

## BACKGROUND

*Bravelle.*  Bravelle (urofollitropin for injection, purified) is a prescription fertility medicine that contains follicle-stimulating hormone ("FSH") derived from the urine of postmenopausal women ("urinary FSH").  Compl. ¶ 2.  Physicians commonly prescribe Bravelle as part of *in vitro* fertilization ("IVF") or intrauterine insemination ("IUI") procedures.  *Id.*[1]

---

[1] IVF is a procedure in which eggs (oocytes) are extracted from an ovary, artificially inseminated, and implanted in a woman.  *See In vitro fertilization (IVF)*, Mayo Clinic (March 22, 2018), https://www.mayoclinic.org/tests-procedures/in-vitro-fertilization/about/pac-20384716.  IUI is a procedure in which ovulation is monitored and/or induced and sperm is placed directly in a woman's uterus to facilitate fertilization.  *See Intrauterine insemination (IUI)*, Mayo Clinic

Bravelle is indicated *only* "to induce ovulation" or assist in "the development of multiple

follicles" in women who are otherwise already capable of producing and releasing eggs.  Ex. 1

(Bravelle Prescribing Information, *available at* https://www.accessdata.fda.gov/

drugsatfda_docs/label/2014/021289s019lbl.pdf, at 3 (last visited May 1, 2018)) ("Prescribing

Information").[2]  Bravelle is not indicated to improve or otherwise affect egg quality, nor is it

indicated to guarantee pregnancy.  *Id.* at 1-3.  Bravelle is dosed to effect, meaning that physicians

monitor a patient's response to the drug and may adjust the dose up or down based on that

response.  Ex. 2 (Bravelle Patient Information, *available at*

https://www.accessdata.fda.gov/drugsatfda_docs/label/2014/021289s019lbl.pdf at 15 (last visited

May 1, 2018)) ("Patient Information") ("Your healthcare provider will tell you how much

BRAVELLE to use and when to use it.  Your healthcare provider may change your dose of

BRAVELLE if needed.").

     ***Voluntary Recall of Bravelle***.  In October 2015, routine stability testing indicated that

*certain* (but not all) batches of Bravelle did not meet potency specifications through the entire

shelf life and were out of specification ("OOS") at the time of testing (twelve months or more

---

(Aug. 11, 2017), https://www.mayoclinic.org/tests-procedures/intrauterine-insemination/about/pac-20384722.

[2] In reviewing a Motion to Dismiss, a court is "not confined to the four corners of the complaint."  *U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F. 3d 131, 136 (4th Cir. 2014).  Courts may consider documents attached to a motion to dismiss "so long as they are integral to the complaint and authentic," such as the prescribing information for Bravelle published on the FDA website.  *Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  Further, this Court "may judicially notice a fact that is not subject to reasonable dispute because it: . . . can be accurately and readily determined from sources whose accuracy cannot reasonable be questioned," Fed. R. Evid. 201(b)(2),  accordingly, this Court may take judicial notice of the FDA website pages cited in this Memorandum.  This Court "may take judicial notice on its own; or must take judicial notice if a party requests it and the court is supplied with the necessary information."  Fed. R. Evid. 201(c).

into their shelf life). Compl. ¶ 6. Although the OOS result was identified only with respect to

certain batches, and only for batches tested at twelve months or more into their shelf life, all

Bravelle then on the market and within expiry was voluntarily recalled from retailers out of an

abundance of caution. The FDA was notified and assigned the recall # D-0015-2016. The recall

was classified as a Class III recall, meaning that exposure to recalled Bravelle was not likely to

cause adverse health consequences, and it was initiated at the retail level only (*i.e.*, not at the

patient level). Ex. 3 (FDA Enforcement Report - Week of Oct. 21, 2015, *available at*

https://web.archive.org/web/20151029201856/https://www.accessdata.fda.gov

/scripts/enforcement/enforce_rpt-Product-Tabs.cfm?action=select&recall_number=D-0015-

2016&w=10212015&lang=eng (last visited May 4, 2018)).

     ***Voluntary Reimbursement Program.*** Although not required to do so, Ferring

established the Bravelle Reimbursement Program, which reimbursed out-of-pocket Bravelle

costs for *anyone* who bought *any* Bravelle in the U.S. between March 27, 2014 and October 15,

2015, with *no exclusionary criteria*. For instance, someone who bought Bravelle entirely within

specification during that time period was eligible for reimbursement. Someone who bought

Bravelle that was OOS when tested at 12 months but was within specification at the time she

used it was eligible for reimbursement. Someone who bought OOS Bravelle but whose doctor

increased her dose to an appropriate level was eligible for reimbursement. Even someone who

bought Bravelle *and became pregnant* was still eligible for reimbursement.

     ***Plaintiff's Use of Bravelle.*** Plaintiff's Complaint provides very little information

regarding her use of Bravelle. She alleges that she "wanted to have a baby and was told by her

doctor(s) that bravelle [sic], in connection with a lengthy and expensive course of treatment,

would enhance her ability to become pregnant." Compl. ¶ 3. After following "medical expert

4

advice," she took Bravelle, underwent a "medical procedure" beginning September 25, 2014, but did not become pregnant.  Compl.  ¶¶ 4-5.  Plaintiff does not identify the medical procedure or describe the dose of Bravelle she received, whether that dose changed during treatment, whether Bravelle induced ovulation during her treatment, or whether she developed multiple follicles. Furthermore, Plaintiff does not allege any facts concerning whether the Bravelle she used was defective, let alone OOS:  she does not allege the lot number of the Bravelle used, where she purchased Bravelle, when she purchased it, or how much she paid.

Instead, the entirety of her Complaint rests on the conclusory allegation that Ferring sold her a drug "that did not and would not work as advertised and intended, and which [Ferring] knew or should have known would not work or accomplish the medical and pharmaceutical effect intended."  Compl. ¶ 9.  Without any other factual support, Plaintiff asserts claims of negligence, breach of express warranty, breach of implied warranty, unjust enrichment, negligent misrepresentation, intentional misrepresentations, breach of contract, and violation of the Maryland Consumer Protection Act ("MCPA").  Compl. ¶¶ 10-36.

## LEGAL STANDARD

**Rule 12(b)(1)**.  A challenge to standing is decided under Rule 12(b)(1).  *See Trinity Outdoor, L.L.C. v. City of Rockville, MD*, 123 Fed. Appx. 101, 104-05 (4th Cir. 2005).  "When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject matter  jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff."  *Richmond, Fredericksburg & Potomac R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991); *see also In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243-44 (3d Cir. 2012) (applying the *Twombly-Iqbal* plausibility requirement in evaluating a challenge under 12(b)(1)).

**Rules 8, 12(b)(6), and 9(b)**.  To survive a motion to dismiss under Rules 8 and 12(b)(6), a complaint must "state a claim to relief that is plausible on its face."  *Bell Atlantic Corp v.*

5

*Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Naked allegations—

a formulaic recitation of the necessary elements—are no more than conclusions and therefore do

not suffice."  *McCleary -Evans v. Md. Dept. of Transp., State Highway Admin.*, 780 F. 3d 582,

584-85 (4th Cir. 2015) (quoting *Twombly*) (internal quotation marks omitted).

Under Rule 9(b), fraud-based claims—including Plaintiff's claims for intentional

misrepresentations and violation of the MCPA—must be pled with particularity.  *See* Fed. R.

Civ. P. 9(b); *Haley v. Corcoran*, 659 F. Supp. 2d 714, 724 (D. Md. 2009) (applying 9(b) to

intentional misrepresentation and MCPA claims).  Such claims should be dismissed under Rule

9(b) if they fail to specifically allege "the time, place, and contents of the false representations,

as well as the identity of the person making the representation and what he obtained thereby."

*Spaulding v. Wells Fargo Bank, N.A.*, 714 F. 3d 769, 781 (4th Cir. 2013) (internal citations

omitted).

## I.   BECAUSE PLAINTIFF HAS NOT PLAUSIBLY ALLEGED DEFECT, CAUSATION, OR INJURY, SHE LACKS STANDING AND FAILS TO PLEAD ELEMENTS OF HER CLAIMS (ALL COUNTS).

Because Plaintiff has not alleged that she suffered any injury or loss as a result of

Ferring's conduct, Plaintiff's claims fail in two respects: (1) Plaintiff lacks standing to pursue her

claims under Rule 12(b)(1) and Article III; and (2) Plaintiff has not properly pled the elements of

her state law claims, requiring dismissal under Rules 8 and 12(b)(6).

### A.   Because Plaintiff Has Not Alleged An Injury in Fact, She Lacks Standing and Fails to Plausibly Plead the Elements of Her State-Law Claims (All Counts).

Article III of the U.S. Constitution limits this Court's jurisdiction to actual "cases or

controversies."  U.S. Const. art. III, § 2.  "The Supreme Court has made clear that standing is an

essential and unchanging part of that case-or-controversy requirement." *Doe v. Obama*, 631 F.3d 157, 160 (4th Cir. 2011) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  To meet the constitutional burden, a plaintiff must allege an injury-in-fact, which is an invasion of a legally protected interest that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.*

Bravelle is indicated for two purposes only: (1) to induce ovulation and (2) to stimulate the development of multiple follicles.  Compl. ¶ 2; Ex. 1 (Bravelle Prescribing Information). Plaintiff lacks standing because she does not allege any facts concerning her use of Bravelle, let alone facts supporting her conclusory allegation that Bravelle "did not work and would not work as advertised and intended."  Compl. ¶ 9.  She does not allege that she did *not* ovulate or that she did *not* develop multiple follicles after using Bravelle.  In fact, the Complaint is devoid of *any* information regarding what type of "treatment" Plaintiff underwent.  Such "naked allegations" amount to a formulaic recitation of conclusions and are not sufficient to establish an injury-in-fact.  *See, e.g.*, *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 243 F. Supp. 3d 609, 613-15 (D. Md. 2017) (naked allegation that defendant suffered a data breach, without any evidence that breach occurred or that plaintiff's data was compromised, insufficient to establish standing).

At most, the Complaint alleges that Plaintiff expected to but did not become pregnant after using Bravelle.  *See* Compl. ¶¶ 3 ("[P]laintiff wanted to have a baby . . . ."), 5 ("[P]laintiff did not become pregnant.").  However, the mere fact that Plaintiff did not become pregnant does not establish that she was injured by purchasing Bravelle.[3]  Plaintiff does *not* allege that Ferring

---

[3]  Bravelle plays no role after the stimulation cycle.  A woman may not become pregnant after stimulation for a variety of reasons having nothing to do with Bravelle.  For instance—and setting aside all of the issues that may be present with the other half of the equation, the sperm— the eggs may be damaged during handling, a woman may have genetically abnormal eggs that

somehow warranted or promised that Bravelle would allow her to become pregnant.  Rather, Plaintiff alleges that her "doctor(s)" told her that "bravelle [sic] . . . would enhance her ability to become pregnant."  Compl. ¶ 3.  Unspecified statements made by "doctor(s)" rather than Ferring cannot state a claim against Ferring.  Because Plaintiff has not plausibly pled that she suffered an injury-in-fact, this Court does not have jurisdiction over her claims.  Accordingly, all counts should be dismissed under Rule 12(b)(1).

Separate from the issue of standing, plaintiff's failure to adequately plead that she was injured also requires dismissal under Rule 12(b)(6).  Injury is an element of each of Plaintiff's claims.  *Fischbach & Moore Intern. Corp. v. Crane Barge R-14*, 632 F.2d 1123, 1125 (4th Cir. 1980) ("In a warranty action, a plaintiff must show . . . that the breach proximately caused the injury or damage."); *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 130 A.3d 1024, 1046 (Md. Ct. Spec. App. 2016) ("[Negligence and negligent misrepresentation] are comprised of the following elements: . .  The Plaintiff suffers damage proximately caused by the defendant's negligence."); *Brass Metal Prods., Inc. v. E-J Enterprises, Inc.*, 984 A.2d 361, 386 (Md. Ct. Spec. App. 2009) ("A claim for 'intentional misrepresentation' requires proof . . . that the person suffered damage directly resulting from the misrepresentation.");  *Antonio v. Security Servs. of America, LLC*, 701 F. Supp. 2d 749, 761-62 (D. Md. 2010) ("In order to recover on a breach of contract claim, a plaintiff must prove . . . that the plaintiff suffered actual damages as a result of the breach.") (internal citation omitted); *Haley v. Corcoran*, 659 F.Supp.2d at 724 ("A person is unjustly enriched when he . . . acquires property which it would have been wrongful for him to acquire . . . ."); *Morris v. Osmose Wood Preserving*, 667 A.2d 624, 634 (Md. App. Ct.

---

result in miscarriage, eggs may not develop into embryos, an embryo may not implant in her uterus, or a fetus may not progress.

1995) ("[A]ny person may bring an action to recover for injury or loss sustained by him as the
result of a practice prohibited by [the MCPA]."). As discussed above, her conclusory allegations
are insufficient to plausibly plead any injury, requiring dismissal under Rule 12(b)(6).

> **B.      Plaintiff Fails to Plead that Her Bravelle Was Defective or Caused Her Any Injury (All Counts).**

Plaintiff further failed to plead that her Bravelle was defective and caused her any injury.
Plaintiff alleges that Ferring sold her "a drug that did not and would not work," Compl. ¶ 9, but
there are no factual allegations to support this naked conclusion.  She does not allege for
instance, that her Bravelle was tested and determined to be subpotent.  Each of her claims
requires that Ferring have done something wrong as to *her*, and her failure to allege any specifics
about her Bravelle specifically requires dismissal of her case. *Fischbach*, 632 F. 2d at 1125 ("In
a warranty action, a plaintiff must show . . . that the product did not conform to the warranty, and
that the breach proximately caused the injury or damage."); *Balfour*, 130 A.3d at 1035, 46
(breach of duty and proximate causation elements of negligence and negligent
misrepresentation); *Morris*, 667 A.2d at 633-34 (MCPA allows recovery for injury caused by
prohibited, deceptive trade practices).

> **II.     PLAINTIFF HAS NOT ADEQUATELY PLED OTHER ELEMENTS OF HER CLAIMS.**

> **A.      Plaintiff's Claims for Breach of Contract and Breach of Express Warranty Fail Because No Warranty Was Ever Made (Counts II and VII).**

Plaintiff's breach of express warranty and breach of contract claims are premised on the
same allegation: that Ferring "expressly warranted to the plaintiff that the drug bravelle [sic] was
an effective drug and that it would function as intended, that is, it would, if used as directed,
stimulate egg maturation and multiple follicular development in women in general and in the
plaintiff specifically." Compl. ¶ 14; *see also*, *id.* ¶ 33 ("[T]he defendant agreed to provide a drug

that would act as advertised, promoted and sold.").  Under Maryland law, a plaintiff must identify a "specific statement of fact or promise" to support these claims.  *Stanley v. Central Garden and Pet Corp.*, 891 F. Supp. 2d 757, 764-65 (D. Md. 2009) (general assertion that defendant's "marketing program, promotional activities, product labeling, package inserts" warranted product safety did not establish warranty).

Plaintiff does not allege any of the factual circumstances surrounding where or how Ferring expressly warranted either of the indications or the "effectiveness" of the drug *for Plaintiff*.  She fails to allege that she actually read, heard, or saw a statement by Ferring before she purchased Bravelle (let alone that such a statement formed the basis of her bargain with Ferring).  *Cf.* Md. Cd. Ann., Com. Law § 2-313(1)(a) (express warranty created if "affirmation of fact or promise . . . becomes part of the basis of the bargain"). What is more, to the extent that any statements regarding Bravelle formed the basis for a warranty or other contractual obligation, there are no allegations that Ferring failed to perform on that warranty.  As discussed above, the Complaint does not include any allegations regarding whether Plaintiff did not ovulate, or did not produce multiple follicles.  Accordingly, Plaintiff's claims are insufficiently plead and should be dismissed.

**B.      Plaintiff's Negligence Claims Fail Because Ferring Did Not Owe Her A Duty of Care (Counts I and V).**

Duty is an element of all negligence claims, including negligent misrepresentation.  *See Balfour*, 130 A.3d at 1046-47 ("(1) The defendant, owing a duty of care to the plaintiff, negligently asserts a false statement.").  Plaintiff's negligence claims are deficient because she has not alleged that Ferring owed her a duty of care.  Nor could Plaintiff allege any duty of care because, under the economic loss doctrine, tort duties do not arise out of contractual relationships.  *See Rotorex Co. v. Kingsbury Corp.*, 42 F. Supp. 2d 563, 575 (D. Md. 1999)

("This and other courts have held that a party which has entered into a contract for the sale of goods may not recover in tort for purely economic losses arising out of the quality or performance of the goods."); *Blue Circle Atlantic v. Falcon Materials, Inc.*, 760 F. Supp. 516, 519 (D. Md. 1991) (dismissing negligent misrepresentation claims for purely economic losses); *21st Century Properties Co. v. Carpenter Insulation & Coatings Co.*, 694 F. Supp. 148, 151 (D. Md. 1988) (no tort duty for sale and installation of foam roofs).

Even if by some stretch of the imagination Plaintiff's Complaint adequately alleges an injury (which, as discussed above, it does not), it is economic in nature. The Complaint includes only boilerplate allegations of non-economic damages, which should be disregarded. *See* Compl. ¶¶ 12 (Plaintiff "suffered severe emotional damages" and was "subjected to physical pain"); 27 ("the plaintiff incurred monetary and non-monetary damages). Accordingly, Plaintiff cannot recover under either of her negligence theories because she has not alleged, and cannot allege, that Ferring owed her a duty of care.

## C.     Plaintiff's Fraud-Based Claims Are Not Pled with Particularity (Counts VI and VIII).

Plaintiff's Complaint does not identify any specific fraudulent communication from Ferring that she saw or read regarding Bravelle. "When a plaintiff alleges fraud or when the gravamen of the claim is fraud even though the theory supporting the claims is not technically termed fraud," the heightened pleading standard of Rule 9(b) applies. *Haley*, 659 F. Supp. 2d at 724 (applying Rule 9(b) to intentional misrepresentation and MPCA claims). Because both Plaintiff's intentional misrepresentation and MPCA claims sound in fraud, they are subject to Rule 9(b). *See* Compl. ¶¶ 9 ("[T]he defendant knew or should have known [Bravelle] would not work or accomplish the medical and pharmaceutical effect intended."), 29 ("The defendant intentionally failed to provide accurate information to the plaintiff and it intentionally provided

false information about the effectiveness of the drug"); 36 ("[T]he defendant engaged in an

unfair and/or deceptive trade practice.").  By not even identifying a single statement made by

Ferring, let alone the "who, what, when, where, and how" of fraud, Plaintiff's claims fail under

Rule 9(b).

At best, Plaintiff's Complaint amounts to a generalized allegation of wrongdoing.  *See*

Compl. ¶¶ 29 (Fering "intentionally provided false information about the effectiveness of the

drug"), 36 (Ferring "engaged in an unfair and/or deceptive trade practice").  However, "vague

allegations of misconduct do not satisfy the heightened pleading standard for fraud claims under

[Rule 9(b)]."  *Allied Fire Protection, Inc. v. Thai*, No. PWG-17-551, 2017 WL 4354802, at *11

(D. Md. Oct. 2, 2017) (generalized allegation that former employee "intentionally

misrepresented" his authority insufficient under 9(b)).  Even if Rule 9(b) did not apply,

Plaintiff's allegations do not even meet the minimal pleading standard under Rule 8.  As a result,

both Rules 8 and 9(b) require dismissal of both Plaintiff's intentional misrepresentation and

MCPA claims.  *Walters v. McMahen*, 795 F. Supp. 2d 350, 355-56 (D. Md. 2011) (conclusory

allegations fail to state a claim under both Rule 8 and the more rigorous Rule 9(b)).

## III.  AS A MATTER OF LAW, THE MCPA DOES NOT APPLY TO THE INDIRECT SALE OF PRESCRIPTION PHARMACEUTICALS (COUNT VIII).

Plaintiff's claim under the MCPA fails as a matter of law because the statute *does not*

encompass "indirect" sales by pharmaceutical companies.  The MCPA prohibits certain unfair

and deceptive trade practices "in [t]he sale . . . of any consumer goods."  Md. Code Ann.,

Commercial Law § 13-303(1).  The act defines a "sale" to include the "sale of or offer or attempt

to sell merchandise, real property, or intangibles for cash or credit."  *Id.* at § 13-101(i)(1).  In

considering the scope of "sale" under the MCPA, the Maryland Court of Appeals expressly

found that the statute *does not* encompass "indirect" sales between a manufacturer and a

consumer.  *See Morris*, 667 A.2d at 636.  The question in *Morris* was whether individual homeowners could pursue MCPA claims against a plywood manufacturer, where the plywood in the homeowners' roof was purchased by a third-party builder.  *Id.* at 628-30.  The court found that because the manufacturer had marketed and sold the plywood to the builder—not the homeowners—there had not been a "sale" as defined by the MCPA, and therefore the claim failed as a matter of law.  *Id.* at 636.

Ferring does not directly sell Bravelle to patients, and Plaintiff does not allege that she bought Bravelle directly from Ferring.  Bravelle is a prescription drug, chosen by doctors, and sold to patients through third-party pharmacies.  *See* Compl. ¶¶ 2, 3 ("[Plaintiff] was told *by her doctor(s)* that bravelle [sic]. . . would enhance her ability to become pregnant.").  As in *Morris*, because "Maryland's statute does not define sale to encompass indirect attempts to sell," 667 A.2d 636, Plaintiff's MCPA claim fails as a matter of law and should be dismissed.

## IV.   FERRING'S REIMBURSEMENT OFFER BARS PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT (COUNT IV).

Plaintiff cannot pursue a claim for unjust enrichment against Ferring because, as Plaintiff admits in her Complaint, "Ferring offered to reimburse its customers for the cost of its drug; the plaintiff did not accept that offer."  Compl. ¶ 7.  The elements of a claim for unjust enrichment are: "(1) the plaintiff confers a benefit upon the defendant; (2) the defendant knows or appreciates the benefit; and (3) the defendant's acceptance *or retention* of the benefit under the circumstances is such that it would be inequitable to allow the defendant to retain the benefit without the paying of value in return."  *Benson v. State*, 887 A.2d 525, 546 (Md. App. Ct. 2005) (emphasis added).  Under a claim of unjust enrichment, a plaintiff is only entitled to restitution of the money actually retained by the defendant, *not the loss by the plaintiff.   See Mogavero v.*

13

*Silverstein*, 790 A.2d 43, 52-53 (Md. Ct. Spec. App. 2002).  Here, any money actually retained by Ferring is the purchase price of Bravelle.

Ferring has already offered to return to Plaintiff the purchase price of Bravelle through the Bravelle Reimbursement Program.  Compl.  ¶ 7.  *Plaintiff rejected that offer*, and cannot now say that it would be "inequitable" for Ferring to retain the money it has already offered her.  Her unjust enrichment claim should be dismissed under Rule 12(b)(6).

## CONCLUSION

For the reasons discussed above, the Court should dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 8, 12(b)(1), and 12(b)(6).

Dated: May 7, 2018                                       Respectfully submitted,

                                        */s/ James A. Frederick*
                                        Linda S. Woolf  (Bar No. 08424)
                                        James A. Frederick  (Bar No. 23506)
                                        Goodell, DeVries, Leech & Dann, LLP
                                        One South Street, 20th Floor
                                        Baltimore, Maryland 21202
                                        Telephone:  410-783-4000
                                        Facsimile:  410-783-4040
                                        lsw@gdldlaw.com
                                        jaf@gdllaw.com

                                        Kara L. McCall (*pro hac vice*)
                                        Elizabeth M. Chiarello (*pro hac vice*)
                                        Lucas T. Rael (*pro hac vice*)
                                        SIDLEY AUSTIN LLP
                                        One South Dearborn Street
                                        Chicago, Illinois  60603
                                        Telephone: (312) 853-7000
                                        Facsimile:  (312) 853-7036

                                        ***Attorneys for Ferring Pharmaceuticals Inc.***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this 7th day of May, 2018, a copy of the foregoing was

served via the Court's ECF system on:


Joseph T. Williams
401 Washington Avenue, Suite 400
Towson, Maryland 21204

Karmen M. Slezak
Parker, Pallett, Slezak & Russell, LLC
11450 Pulaski Highway
White Marsh, Maryland 21162


*Attorneys for Plaintiff*


*/s/ James A. Frederick*_____
James A. Frederick

15