# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **CANDY MOCZULSKI, et al.,** | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO. JKB-18-1094 |
| **FERRING PHARMACEUTICALS, INC.,** | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Candy Moczulski ("Plaintiff") filed suit against Ferring Pharmaceuticals, Inc. ("Defendant"), alleging various state common law and statutory claims. Plaintiff's claims stem from her purchase and use of a fertility drug—Bravelle—that is manufactured and sold by Defendant. Plaintiff originally filed her Complaint in the Circuit Court for Baltimore City, and Defendant's removed the case to this Court. Now pending before the Court is Defendant's unopposed Motion to Dismiss. (ECF No. 18.) Defendant contends that Plaintiff lacks standing and has failed to state a plausible claim for relief. No hearing is required. *See* Local Rule 105.6 (D. Md. 2016). For the reasons set forth below, Defendants' Motion will be GRANTED IN PART and DENIED IN PART.

## I. *Background[1]*

Defendant develops, manufactures, markets, and sells a prescription drug called Bravelle. (Compl., ECF No. 2 ¶ 1.) Bravelle—a urofollitropin—is intended to increase fertility in women.

---

[1] Considering that this Memorandum evaluates a Rule 12 motion to dismiss, the Court here summarizes the allegations as presented by Plaintiff in her complaint. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

(*Id.* ¶ 2.) Specifically, Bravelle contains follicle stimulating hormone, which stimulates egg maturation and multiple follicular development. (*Id.*) Bravelle is frequently prescribed as part of an *in vitro* fertilization procedure. (*Id.*)

Plaintiff wanted to have a baby and was informed by her doctor that Bravelle would increase the chances of her successfully conceiving. On September 25, 2014, Plaintiff began "a lengthy and expensive medical procedure,"[2] which included the use of Bravelle. Despite using Bravelle as prescribed, Plaintiff did not become pregnant. (*Id.* ¶ 5.) Plaintiff alleges that Defendant "knew or should have known" that the Bravelle sold to Plaintiff "did not and would not work as advertised and intended" and "would not . . . accomplish the medical and pharmaceutical effect intended." (*Id.* ¶ 9.)

In October 2015, Defendant initiated a voluntary recall of all Bravelle in the United States after discovering "that certain lots of the drug did not meet potency requirements." (*Id.* ¶ 6.) Plaintiff alleges that the Bravelle she purchased and used "was not capable of stimulating egg maturation and multiple follicular development," and therefore it was part of the defective batch. (*Id.* ¶¶ 15, 18.) Defendant offered to reimburse customers, including Plaintiff, who had purchased Bravelle; however, Plaintiff rejected the offer.

## II. Legal Standards

### A. Standard for Dismissal under Rule 12(b)(1)

A challenge to a plaintiff's standing "implicates th[e] court's subject matter jurisdiction." *Long Term Care Partners, LLC v. United States*, 516 F.3d 225, 230 (4th Cir. 2008); *accord White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005). The Plaintiff bears the

---

[2] Plaintiff does not further explain the nature of her "lengthy and expensive medical procedure." Plaintiff's Complaint is far from a picture of clarity, repeatedly leaving the reader grasping for more regarding the details surrounding her use of Bravelle. However, as explained *infra*, it contains sufficient, albeit minimal, allegations to state at least some claims for relief.

burden of establishing subject-matter jurisdiction. *Frank Krasner Enterprises, Ltd. v. Montgomery Cty.*, 401 F.3d 230, 234 (4th Cir. 2005) ("The burden of establishing standing to sue lies squarely on the party claiming subject-matter jurisdiction."); *accord Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

### B.   *Standard for Dismissal under Rule 12(b)(6)*

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. An inference of a "mere possibility of misconduct" is not sufficient to support a plausible claim. *Id.* at 679. However, "a well–pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556. Even so, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (citation omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

### III.   Analysis

Plaintiff alleges eight counts under Maryland state law against Defendant stemming from her purportedly defective dose of Bravelle. Specifically, she asserts the following causes of action: (1) negligence; (2) breach of express warranty; (3) breach of implied warranty; (4) unjust enrichment; (5) negligent misrepresentation; (6) intentional misrepresentations; (7) breach of

contract; (8) and a violation of the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-101, *et seq.* Essentially, Plaintiff contends that Defendant sold her a defective product that it knew or should have known was incapable of working as advertised and intended. Defendant primarily argues that Plaintiff has not plausibly alleged an injury-in-fact, and therefore she lacks standing to bring any of her claims. And, even assuming Plaintiff does have standing, Defendant contends that her Complaint fails to state a claim for relief, again because she has not adequately alleged she suffered any injury. Defendant also makes several additional arguments addressed to specific claims asserted by Plaintiff.

### A. *Standing*

At the outset, the Court must assure itself that Plaintiff has standing. If she does not, then the Court lacks subject matter jurisdiction and must dismiss the case in its entirety.

A plaintiff's standing to sue in federal court is "an integral component of the case or controversy requirement" of Article III. *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006). To demonstrate standing, a plaintiff must show that: (1) she has suffered an injury in fact; (2) the injury is fairly traceable to the defendant's actions; and (3) the injury is likely to be redressed by a favorable decision of the court. *Lujan*, 504 U.S. at 560–61. The injury alleged must be "concrete and particularized." *Id.* at 560. At the pleading stage, however, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 892 F.3d 613, 620 (4th Cir. 2018) (quoting *Lujan*, 504 U.S. at 561).

Defendant contends that Plaintiff has failed to allege sufficient facts in support of her claimed injury. According to Defendant, Plaintiff alleges only that Bravelle "did not work and

4

would not work as advertised and intended." (Ferring Pharmaceuticals Inc.'s Mem. in Supp. of its Mot. to Dismiss, ECF No. 18-1, at 7.) Defendant also notes that Plaintiff does not specifically allege that "she did *not* ovulate or that she did *not* develop multiple follicles after using Bravelle," (*id.* at 7) nor does she offer any proof that her Bravelle was "tested and determined to be subpotent," (*id.* at 9).

Defendant misconstrues Plaintiff's burden at this stage in the litigation. The parties agree that Bravelle is intended to stimulate egg maturation and multiple follicular development. Plaintiff alleges that she purchased Bravelle and used it as prescribed. (ECF No. 2 ¶ 5.) She further alleges that the drug she purchased "did not and would not work." (*Id.* ¶ 9.) And she specifically alleges that "the . . . [B]ravelle that was sold to [her] *was not capable of stimulating egg maturation and multiple follicular development*." (*Id.* ¶¶ 15, 18 (emphasis added).) Later, Plaintiff again states that the Bravelle that was sold to her "was not viable or effective." (*Id.* ¶ 36.) Indeed, by the Court's count, Plaintiff alleges no less than seven times in her Complaint that the Bravelle she purchased was incapable of working as intended and in fact did not work. In other words, Plaintiff alleges, repeatedly, that her Bravelle was incapable of stimulating egg maturation and multiple follicular development, the exact thing that the parties agree it was intended to do.[3] Plaintiff also alleges that she suffered both monetary and non-monetary injuries as a result of purchasing ineffective Bravelle from Defendant. These claims are plausible;

---

[3] Defendant makes much of Plaintiff's allegation that she did not become pregnant. Defendant notes, correctly, that just because Plaintiff did not become pregnant does not mean that she did not ovulate or develop multiple follicles. In other words, Plaintiff's failure to become pregnant is certainly not dispositive evidence that her Bravelle was defective. However, the fact that Plaintiff included this non-dispositive allegation does not detract from her numerous other allegations in which she explicitly states that her Bravelle was incapable of stimulating egg maturation or multiple follicular development.

5

nothing more is required of Plaintiff at this stage in the proceeding to establish her standing. Accordingly, the Court finds that Plaintiff has standing to pursue her claims against Defendant.[4]

### B. *Negligence Claims*

In Counts I and V, Plaintiff alleges negligence and negligent misrepresentation respectively.

Under Maryland law, to state a claim for negligence, the plaintiff must allege facts showing "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Horridge v. St. Mary's Cty. Dep't of Soc. Servs.*, 854 A.2d 1232, 1238 (Md. 2004) (quoting *Remsburg v. Montgomery*, 831 A.2d 18, 26 (Md. 2003)).

To state a claim for negligent misrepresentation in Maryland, a plaintiff must plausibly allege that:

(1) The defendant, *owing a duty of care to the plaintiff*, negligently asserts a false statement;

(2) The defendant intends that his statement will be acted upon by the plaintiff;

(3) The defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury;

(4) The plaintiff, justifiably, takes action in reliance on the statement; and

(5) The plaintiff suffers damage proximately caused by the defendant's negligence.

---

[4] For the same reasons, the Court rejects Defendant's general argument for dismissal under Rule 12(b)(6) on the ground that Plaintiff fails to plead a plausible injury—an element of each of her claims. (ECF No. 18-1 at 8–9 (arguing that "plaintiff's failure to adequately plead that she was injured also requires dismissal under Rule 12(b)(6)"). As explained above, Plaintiff has plausibly alleged that her Bravelle was defective and nothing more is required. She certainly is not required to offer proof *in her Complaint* that her Bravelle "was tested and determined to be subpotent," (*id.* at 9) as suggested by Defendant. Accordingly, Defendant's general argument for dismissal of all counts on this ground is meritless.

6

*Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 130 A.3d 1024, 1046 (Md. Ct. Spec. App. 2016) (quoting *Flaherty v. Weinberg*, 492 A.2d 618, 627–28 (Md. 1985)), *cert. granted sub nom. Beatty v. Rummel, Klepper & Kahl*, 135 A.3d 416 (Md. 2016), *and aff'd*, 155 A.3d 445 (Md. 2017). Plaintiff's claims for negligence and negligent misrepresentation are closely related: Both "require[] a duty, breach of duty, injury and causation, the major difference is that negligent misrepresentation focuses on affirmative statements made by the defendant that were intended to, and indeed, had the effect of, inducing the plaintiff to carry out some action in reliance on the false statements." *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 274 n.10 (Md. 2007). Generally such claims do not merge into one so long as "the plaintiff would have a cause of action based on the underlying negligence independent of the misrepresentation." *Village of Cross Keys, Inc. v. U.S. Gypsum Co.*, 556 A.2d 1126, 1132 (Md. 1989) (citing *Block v. Neal*, 460 U.S. 289, 296–98 (1983)). Here, however, the only duty that Plaintiff has alleged Defendant owed her is the duty to "transmit[] . . . accurate information about the drug and its effectiveness."[5] (ECF No. 2 ¶24.) In other words, Plaintiff has not alleged "negligence independent of the misrepresentation," *Village of Cross Keys*, 556 A.2d at 1132. Accordingly, the Court will consider only her negligent misrepresentation claim.

Defendant argues that the economic loss doctrine bars Plaintiff's negligent misrepresentation claim. "The economic loss doctrine represents a judicial refusal to extend tort liability to negligence that causes purely economic harm *in the absence of privity, physical injury, or risk of physical injury*." *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 155 A.3d 445, 451 (Md. 2017) (emphasis added). Put differently, absent (1) privity

---

[5] Defendant again seemingly ignores straightforward allegations in Plaintiff's Complaint. Defendant states that "Plaintiff's negligence *claims* are deficient because she has not alleged that Ferring owed her a duty of care." (ECF No. 10 (emphasis added).) As noted by the Court, this is true as to Plaintiff's "ordinary" negligence claim, but it is incorrect as to Plaintiff's negligent misrepresentation claim. In support of the latter claim, Plaintiff plainly alleges that Defendant had a duty to transmit accurate information to her about the effectiveness of Bravelle.

between the plaintiff and defendant, or (2) negligent conduct that leads to physical injury (or the risk of such injury), a plaintiff in Maryland may not recover economic losses resulting from a defendant's negligent misrepresentation. *Id.* ("In Maryland, the economic loss doctrine bars recovery when the parties are not in privity with one another or the alleged negligent conduct did not result in physical injury or risk of severe physical injury or death."); *see, e.g.*, *Swinson v. Lords Landing Village Condo.*, 758 A.2d 1008, 1016 (Md. 2000) ("As a general rule, when the failure to exercise due care creates a risk of economic loss only, and not the risk of personal injury, we have required an 'intimate nexus' between the parties as a condition to the imposition of tort liability. That 'intimate nexus' may be satisfied by contractual privity, . . . 'or its equivalent.'").

Plaintiff has alleged both contractual privity and physical injury, and therefore the economic loss doctrine does not bar her claim for negligent misrepresentation. First, Plaintiff plainly alleges that "the parties entered into a contract." (ECF No. 2 ¶ 33.) Defendant does not dispute this. This allegation alone is sufficient to overcome Defendant's reliance on the economic loss doctrine. Moreover, Plaintiff alleges that, in addition to her economic losses, she suffered "severe emotional damages" and "she was subjected to physical pain and suffering associated with the procedure." (ECF No. 2, ¶ 12.) Plaintiff provides little to nothing in the way of specifics regarding her emotional damages and physical pain. However, a careful review of the Complaint reveals some clues. For example, Plaintiff alleges that the time lost in the course of her defective treatment "has significantly decreased her chances of becoming pregnant." (*Id.* ¶ 8.) And she alleges that her physical pain stemmed from her procedure. Viewing these allegations in the light most favorable to Plaintiff, as the Court must at this early stage in the

8

proceedings, the Court finds that Plaintiff has sufficiently alleged noneconomic injuries, including physical injury, caused by Defendant's alleged negligent misrepresentation.

Accordingly, Plaintiff's claim for negligent misrepresentation will not be dismissed at this stage of the litigation. However, because Plaintiff has not alleged Defendant owed her any duty beyond the duty to provide accurate information, she may not pursue a free-standing claim for negligence (i.e., Count One).

### C. *Breach of Express Warranty and Breach of Contract*

Defendant argues that Plaintiff's breach of express warranty and breach of contract claims must be dismissed because Plaintiff does not identify a specific statement or contractual provision that Defendant breached. Defendant again misconstrues Plaintiff's burden at the pleading stage.

#### 1. *Breach of Express Warranty*

Under Maryland law, to state a claim for breach of express warranty, a plaintiff must allege: "(1) a warranty existed; (2) the product did not conform to the warranty; and (3) the breach proximately caused the injury or damage." *Robinson v. Am. Honda Motor Co., Inc.*, 551 F.3d 218, 223 (4th Cir. 2009) (quoting *SpinCycle, Inc. v. Burcin Kalender*, 186 F. Supp. 2d 585, 589 (D. Md. 2002)). Any "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Md. Code Ann., Com. Law § 2–313(1)(a). Likewise, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." *Id.* § 2–313(1)(b). "To establish an express warranty by affirmation, promise, description or sample, the

9

representation must form the basis of the bargain." *Thomas v. Ford Motor Credit Co.*, 429 A.2d 277, 283 (Md. Ct. Spec. App. 1981) (citing Md. Code Ann., Com. Law § 2-313).

According to Defendant, "[u]nder Maryland law, a plaintiff must identify a 'specific statement of fact or promise' to support these claims." (ECF No. 18-1, at 10 (quoting *Stanley v. Central Garden and Pet Corp.*, 891 F. Supp. 2d 757, 765 (D. Md. 2009)).) Defendant contends that Plaintiff fails to state a claim because she does not identify a "specific statement of fact or promise" made by Defendant in support of her breach of express warranty and contract claims. (ECF No. 18-1, at 10.)

Defendant's position is not supported by—and in fact is at odds with—Maryland law. First, Defendant does not identify a single Maryland case that supports this purported specificity requirement. Instead, Defendant relies entirely on one offhand comment in *Stanley*, which did not cite to any *Maryland* case law in support. Moreover, in *Stanley*, the Court merely observed that "[t]he amended complaint does not point to any specific statement of fact or promise by the defendants that Stanley alleges was false." 891 F. Supp. 2d at 765. Nowhere did the court suggest that such a specific statement is a *requirement* under Maryland law.[6] Defendant's use of a cherry-picked portion of a quote is thus misleading and inaccurate.

More importantly, Maryland case law directly refutes Defendant's specificity argument. It is true that a number of Maryland courts have stated generally that "a plaintiff must set forth the 'terms and conditions of the warranty.'" *Pulte Home Corp. v. Parex, Inc.*, 923 A.2d 971, 996 (Md. Ct. Spec. App. 2007) (quoting *Thomas v. Ford Motor Credit Co.*, 429 A.2d 277, 283 (Md.

---

[6] Indeed, the court in *Stanley* appears to have relied more on the plaintiff's opposition than on her complaint in dismissing the breach of express warranty claim. The court concluded that a statement included in the plaintiff's opposition motion—not her complaint—"d[id] not represent that the specific . . . product Stanley purchased was safe for her particular dog." 891 F. Supp. 2d at 765. In other words, the plaintiff in *Stanley did* point to a specific statement but that statement *did not* support her claim. True, the court also observed that "neither the opposition nor the amended complaint describe[d] where this [specific] language [wa]s located," *id.*, but the court did not rely on this alleged deficiency in dismissing the claim for breach of express warranty.

10

Ct. Spec. App. 1981)), *aff'd*, 942 A.2d 722 (2008). However, placed in context, this statement sets a low bar. This language originated in *Thomas v. Ford Motor Credit Co.* In *Thomas*, the plaintiff purchased an automobile; included in the purchase price was a "two year extended warranty." *Id.* at 283. The Maryland Court of Special Appeals found that the plaintiff had failed to state a claim for breach of express warranty because he did not set forth "the terms and conditions of the warranty." *Id.* In other words, it was not sufficient to merely allege a "warranty" without alleging at some basic level what was warranted and how the defendant's product failed to perform as warranted. More recently, in *Pulte*, the Maryland Court of Special Appeals affirmed dismissal of a breach of express warranty claim, relying on *Thomas* to do so. In *Pulte*, the plaintiff alleged that it approved use of the defendant's water barrier product "based on express warranties of Parex given 'by way of affirmations of fact, promises, descriptions, and/or use of samples and/or models regarding the appearance, durability, and or water-resistance of [EIFS].'" *Pulte Home Corp.*, 923 A.2d at 996. The court observed that the plaintiff had merely parroted the language of the Maryland statute governing warranties and failed to provide any factual allegations as to what specifically was warranted and how the product failed to conform to the warranty.

Here, however, Plaintiff has specifically identified what Defendant warranted, the product's failure to conform to that warranty, and that the warranty formed the basis of the bargain. Plaintiff alleges in her Complaint that:

(1) "defendant expressly warranted to the plaintiff that the drug bravelle was an effective drug and that it would function as intended, that is, it would, if used as directed, stimulate egg maturation and multiple follicular development in women in general and in the plaintiff specifically," (ECF No. 2 ¶ 14);

(2) "the drug bravelle that was sold to the plaintiff was not capable of stimulating egg maturation and multiple follicular development in women," (*id.* ¶ 15); and

11

(3) "the express warranty that the drug bravelle was capable of stimulating egg maturation and multiple follicular development in women was the basis for the purchase of the drug and the participation in the protocol," (*id.* ¶ 16).

In other words, Plaintiff has concisely and plausibly alleged each element of a breach of express warranty claim. She need not prove her claim at this stage in the litigation by citing to specific provisions of Defendant's advertising, marketing, or other materials.

Maryland courts have held that allegations similar in scope and specificity to those made by Plaintiff are sufficient to state a claim for breach of express warranty. In *Pittway Corp. v. Collins*, the Maryland Court of Appeals reversed the dismissal of a breach of express warranty claim. 973 A.2d 771, 794 (Md. 2009). The plaintiffs alleged that the manufacturing defendants "expressly warranted via their marketing, advertisements, warranties, sales literature, owners manuals, and other representations that their product(s) and in particular the smoke/fire detector at issue was fit for the purpose of [sic] it was intended, namely the detection and advance warning of smoke and/or fires," and "[t]hat by failing to equip the model/unit with a battery or alternative safety power supply, the Manufacturer Defendants breached said express warranties . . . ." *Id.* These allegations are strikingly similar to those made by Plaintiff in the instant case. The Court of Appeals noted that it was improper for the circuit court to have dismissed the claim without first "examining the User's Manual, as well as marketing and promotional literature and any other documents that Pittway published in order to market the smoke detector to the public." *Id.* Put differently, the plaintiffs were not obligated to include in their complaint specific marketing, advertising or user manual statements in support of their warranty claim. *See also Collins v. Li*, 933 A.2d 528, 578–79 (Md. Ct. Spec. App. 2007) (reversing dismissal of breach of express warranty claim despite plaintiff's failure to "*specifically identify* [defendants'] marketing, advertisements, warranties, sales literature and

other representations that extend the express warranties" because plaintiff had not yet been "afforded the opportunity to produce the documents alleged to extend such warranties").

The same is true here. Plaintiff has plausible alleged that Defendant warranted that Bravelle was effective at stimulating egg maturation and multiple follicular development. Plaintiff has done enough to be "afforded the opportunity," *id.*, through discovery (or trial) "to produce the documents," *id.*, and specific statements necessary to prove her claim. Accordingly, the Court finds that Plaintiff has adequately stated a claim for breach of express warranty.[7]

### 2. *Breach of Contract*

Defendant contends that Plaintiff's breach of contract claim fails for the same reason as her breach of express warranty claim: Plaintiff does not identify the specific contractual language that Defendant breached. Plaintiff must eventually muster evidence, including specific contractual provisions, to support her claim, but she need not do so at this early stage in the proceeding. Rather, Plaintiff must simply allege facts that state a plausible claim for relief.

Under Maryland law, "in order to state a claim for breach of contract, a plaintiff need only allege the existence of a contractual obligation owed by the defendant to the plaintiff, and a material breach of that obligation by the defendant." *RRC Ne., LLC v. BAA Maryland, Inc.*, 994 A.2d 430, 442 (Md. 2010); *accord Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001) ("To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation."); *see Bezmenova v. Ocwen Fin. Corp.*, No. 8:13-CV-00003-AW, 2013 WL 1316445, at *2 (D. Md. Mar. 27, 2013) ("Under Maryland law, the elements of a breach of contract are 1) a contractual obligation and 2) a material breach of that obligation.").

---

[7] Defendant did not move to dismiss Plaintiff's breach of implied warranty claim (Count III) on any independent grounds. Because the Court already rejected Defendant's general arguments that all claims should be dismissed for lack of standing and failure to allege injury, this claim survives as well.

Plaintiff has plausibly alleged a breach of contract claim under Maryland law. She claims that (1) "the parties entered into a contract," (2) "the defendant agreed to provide a drug that would act as advertised, promoted, and sold," and (3) "the defendant breached the contract between them by failing to provide a viable and effective drug." (ECF No. 2 ¶¶33–34.) Defendant does not deny that the parties entered into a contract. Moreover, Defendant concedes that at least some portion of the Bravelle it distributed may have been ineffective. Defendant's only argument is that Plaintiff failed to identify in her Complaint a specific provision of the contract that states that Defendant agreed to provide a drug that performed as it was supposed to.[8] Plaintiff is not required to prove her allegations in the Complaint itself, however.

Taking Plaintiff's allegations as true and drawing all inferences in her favor, as the Court must, she has concisely stated a plausible claim for breach of contract under Maryland law.

### D. *Fraud-Based Claims*

In Counts Six and Eight, Plaintiff alleges that Defendant intentionally provided false information about Bravelle to induce her to purchase it (Count Six) and engaged in unfair and/or deceptive trade practices in violation of the Maryland Consumer Protection Act ("MCPA") (Count Eight). Defendant argues that both counts must be dismissed because they sound in fraud and Plaintiff has failed to support these claims with the requisite particularity to satisfy Federal Rule of Civil Procedure 9(b).

---

[8] Defendant also contends that "there are no allegations that Ferring failed to perform on" its contractual obligations. (ECF No. 18-1, at 10.) This is bizarre given that Plaintiff plainly alleges that Defendant "fail[ed] to provide a viable and effective drug." (ECF No. 2 ¶ 34.) This appears to be a continuation of Defendant's argument that Plaintiff failed to allege an injury because she did not provide proof that she did not ovulate or did not produce multiple follicles. However, as explained *supra*, Plaintiff alleges that the Bravelle she received was "*not capable* of stimulating egg maturation and multiple follicular development in women." (*Id.* ¶ 18 (emphasis added).) In other words, it could not—and therefore did not—function as promised by Defendant. Plaintiff still must prove up this claim through discovery (and perhaps trial), but she need not do so to survive Defendant's motion to dismiss.

14

Defendant is correct that both Count Six and Count Eight are based in fraud and therefore must satisfy the heightened pleading requirements for such claims. *See Haley v. Corcoran*, 659 F. Supp. 2d 714, 724 (D. Md. 2009) (applying Rule 9(b)'s heightened pleading standard to intentional misrepresentation and MCPA claims); *Bradley v. Bradley*, 56 A.3d 541, 548 (Md. Ct. Spec. App. 2012) (noting that cause of action for intentional misrepresentation "is variously known as fraud [or] deceit"). Rule 9(b) states, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The "circumstances constituting fraud or mistake" include "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).

Plaintiff has not alleged any facts in support of her fraud claims with the requisite particularity to satisfy Rule 9(b). For example, Plaintiff alleges that Defendant "intentionally failed to provide accurate information to the plaintiff and it intentionally provided false information about the effectiveness of the drug." (ECF No. 2 ¶ 29.) Plaintiff also conclusorily states that that "[b]y selling to the plaintiff a drug that was not viable or effective, the defendant engaged in an unfair and/or deceptive trade practice in violation of § 13-301 *et seq.* of the Maryland Consumer Protection Act." (*Id.* ¶ 36.) Plaintiff does not allege what specific false statements Defendant made, where or when they were made, or by whom. These general allegations, without more, cannot support claims for fraud.[9]

Plaintiff's allegations fall far short of satisfying Rule 9(b)'s requirements and therefore Counts Six and Eight of her Complaint will be dismissed.

---

[9] Indeed, the majority of Plaintiff's Complaint, which is similarly lacking in detail, provides just enough factual specificity to satisfy Rule 8's more liberal pleading standard.

*E.  Unjust Enrichment*

Last, Defendant moves to dismiss Plaintiff's unjust enrichment claim, arguing that it has not been unjustly enriched because it offered to refund Plaintiff the purchase price of her Bravelle, which she refused.

Under Maryland law,

> [a] claim of unjust enrichment is established when: (1) the plaintiff confers a benefit upon the defendant; (2) the defendant knows or appreciates the benefit; and (3) the defendant's acceptance or retention of the benefit under the circumstances is such that it would be inequitable to allow the defendant to retain the benefit without the paying of value in return.

*Benson v. State*, 887 A.2d 525, 546 (Md. 2005). Notably, "[a]n unjust enrichment action is not premised on a contract[;] . . . . [r]ather, it is a remedy 'to provide relief for a plaintiff when an enforceable contract does *not* exist . . . .'" *Wallace v. Brice*, No. 1248 Sept. Term 2014, 2015 WL 6410174, at *6 (Md. Ct. Spec. App. Oct. 21, 2015) (emphasis added) (quoting *Cty. Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 607 (Md. 2000)); *see Acorn Structures, Inc. v. Swantz*, 846 F.2d 923, 926 (4th Cir. 1988) ("An action for unjust enrichment is quasi-contractual in nature and may not be brought in the face of an express contract."); *see also Dashiell*, 747 A.2d at 608 n.8 (collecting cases holding that an action for unjust enrichment does not lie where there is an express contract governing the parties' relationship). Moreover, because an unjust enrichment claim seeks restitution, the remedy is measured "by the defendant's gain," not the plaintiff's loss. *Bank of Am. Corp. v. Gibbons*, 918 A.2d 565, 569 (Md. Ct. Spec. App. 2007); *Mogavero v. Silverstein*, 790 A.2d 43, 53 (Md. Ct. Spec. App. 2002) ("Thus, the classic measurement of unjust enrichment damages is the gain to the defendant, not the loss by the plaintiff." (internal quotations omitted)).

Plaintiff's allegations do not support her unjust enrichment claim. As an initial matter, Plaintiff has alleged that the parties entered into an express contract and has brought a corresponding claim for breach of contract. Thus, Plaintiff's remedy, if any, lies in her claim for breach of contract. Accordingly, unjust enrichment is not an available means of recovery for her.[10] Moreover, even if Plaintiff's express contract claim did not foreclose her unjust enrichment claim (and it does), she has alleged facts indicating that Defendant attempted to disgorge itself of the benefit she provided. Plaintiff claims that "Ferring offered to reimburse its customers for the cost of its drug; the plaintiff did not accept that offer." (ECF No. 2 ¶ 7.) Plaintiff cannot reject Defendant's offer to reimburse her and then turn around and claim Defendant has been unjustly enriched for retaining the money she paid for Bravelle. Accordingly, Plaintiff's claim for unjust enrichment will be dismissed.

## IV. Conclusion

For the foregoing reasons, an Order shall enter GRANTING IN PART and DENYING IN PART Defendant's Motion to Dismiss (ECF No. 18).

DATED this 19th day of July, 2018.

BY THE COURT:

/s/
James K. Bredar
Chief Judge

---

[10] A plaintiff may plead in the alternative—i.e., assert both contract and quasi-contract claims—"where the existence of a contract concerning the subject matter is in dispute." *Swedish Civil Aviation Admin. v. Project Mgmt. Enterprises, Inc.*, 190 F. Supp. 2d 785, 792 (D. Md. 2002). Here, however, neither party contests the existence of a contract between them. Moreover, Plaintiff has alleged facts that support only her express contract claim. Therefore, her quasi-contract (i.e., unjust enrichment) claim is not a valid alternative theory of recovery, but rather a theory of recovery directly at odds with her factual allegations.